### *Ex parte* CALHOUN, ordinary.

A witness cannot, under the act of Oct. 22, 1887, be compelled by a *subpœna duces tecum* to make discovery of the contents of lost public records in a proceeding to establish a copy of such records, where the pleadings for the purpose do not allege or set out anything whatever as the specific contents to be proved. The production of books and writings which are the private property of the witness will not be compelled for the information of the public, where such information is valuable and where its disclosure is not sought as testimony for the proof of any alleged fact, but as a substitute in the first instance for the allegation of facts unknown, or not known sufficiently to enable the plaintiff to set them forth conformably to general laws applicable to pleading.

July 13, 1891.   Argued at the last term ; reargued at this term.

Evidence. Witness. Production of books and papers. Discovery. Pleadings. Before Judge MARSHALL J. CLARKE. Fulton superior court. March term, 1890.

Calhoun, as ordinary of Fulton county, by his petition alleged that certain books of the records of that county had been lost, stolen or destroyed, these books being deed books B, F and H, mortgage book E, execution docket C, homestead record book A, and minute book of the superior court F. He prayed for the establishment of copies, or substantial copies as near as might be, of all of these books, and that such orders and proceedings be had therefor as were necessary and contemplated and provided for in the act of the General Assembly of October 22, 1887. An auditor was appointed by the superior court, and it was ordered that he be charged as such with all the duties, and invested with all the powers provided for in said act. He reported that, after his appointment, he gave public notice to all persons having any of the deeds, mortgages, executions, homestead records, or original orders or papers recorded on the books mentioned, to file them with the auditor for the purpose of being recorded; that but a few deeds were brought to the auditor in response to

this notice; that on the application of the attorney for the ordinary a *subpœna duces tecum* was issued and served on two witnesses, requiring them to appear and to produce, to be used as evidence, certain books claimed to be in their possession, known as the day-book, journal and ledger, and which embodied an abstract of the lost records in question; that one of the witnesses appeared and testified that neither he nor the other witness had the custody or control of the books; that a *subpœna* of like character was then issued, directed to the secretary and treasurer of the Land Title Warranty and Safe Deposit Company; that when a response was required from the last mentioned witness, he made an answer to the *subpœna* which was demurred to as furnishing an insufficient reason for the non-production of the books required; that the auditor held that the reasons set up were good and sufficient reasons for the refusal on the part of the witness to produce the books; that afterwards, on a hearing had, certain evidence was introduced by the petitioner in support of his case, and upon the conclusion of this evidence the auditor adhered to his former ruling that he had no power to compel the production of the books called for in the *subpœna*. The auditor further reported that there was no other method known to him whereby the lost records could be established, except by the production of the books in the possession of the corporation above named, and if his rulings should be sustained there was nothing further that he could do towards establishing the lost records, and in that event he prayed that his report be considered final.

The *subpœna* which was served upon the secretary and treasurer required him to appear and testify in behalf of petitioner, and to bring with him all the abstract books of the corporation, in which appeared the abstracts of the lost record deed books, B, F and H, and

mortgage book E. The answer was in substance as follows : The corporation has no copies of any of the lost records. Respondent is the custodian of the abstract books and should not be compelled to produce them. The company of which he is secretary and treasurer is a corporation empowered in its charter to carry on, among other things, the business of making abstracts of title and warranting titles to lands. It purchased from one Collins, in 1887, what he represented to be a complete set of abstract books for use in its business, for $30,000. These abstracts were made with great labor, care, skill and expense ; Collins' property rights in them were purchased and paid for by the company and are worth what it paid; they are not copies of the records but contain a memorandum, a mere brief of the titles as they appear of record. It requires skill and learning to make correct abstracts of titles to lands. The company's abstracts are largely abbreviated and made up of characters and other symbols of technical signification ; they are made up by men skilled in the business, and contain a memorandum of all conveyances recorded in the county, with names of parties, quantity of interest conveyed, nature and character of the title, and a memorandum of encumbrances affecting the real estate of the county, as appear from the records ; and they are the only set in existence of the records of said county. In making these abstracts much of the original record is omitted, to wit, the peculiar phraseology of deeds, place of execution, and the name of the subscribing witness. The company at its option sells abstracts of title for a certain consideration, though this is only a part of its business. Its books have never been published, but have been kept strictly private and are in the nature of manuscript for private use only by the company in its business ; they are the subjects of literary property, and the company is the sole owner of

them and of their contents, and, while they remain unpublished, it is entitled to the protection of the law in preserving their privacy. They are very valuable to it in the transaction of its business, and if they should be produced and copied wholly or in part, and made public, the value of them would be greatly impaired and lessened ; and the company is protected by the constitutions of the United States and the State of Georgia in its possession of the property rights in said books, and it is illegal to require it to produce them in order that the same, or some part thereof, may be copied for the use of the public without or with compensation being first paid. Furthermore, the contents of the abstracts are privileged, private information, purchased by it for its own private use. It has no copies of the lost records, but simply abstracts of them which are not competent evidence in any of the courts of this State as to the contents of the lost records. It is daily, almost hourly, using its abstract books, and it would be greatly inconvenienced, hindered and damaged in its business should the books be taken out of its possession for such length of time as it would require to copy or make a memorandum from them, in so far as they refer to the lost records.

The evidence introduced by the petitioner, so far as is material, was in accordance with the matters stated in the answer as matters of fact. It appeared that the corporation had a set of abstract books which contained abbreviated abstracts of the deeds, showing the names of grantors and grantees, dates of deeds and dates of records, consideration, kind of deed, description of the property, name of the official witness, the book and page of the original record, and if there was anything special about the deeds, out of the usual form, that also was shown. The deeds on these books showing the main parts as above stated follow the same order as in the original records. The company has also a brief

copy or abstract of the other lost record books. The information contained in these original books is rearranged into a journal and a ledger.

To the report of the auditor the petitioner assigned error (1) in ruling and holding that the answer to the *subpœna duces tecum* was sufficient, and in refusing to compel the witness to produce the books; (2) in holding, after the evidence offered by petitioner, that he would not compel the production of the books, or at least those of them which contained the original abstract of deeds and other records, as taken from the public records of Fulton county; and (3) in holding that he had no power to compel the production of the books for the reasons set forth in the answer. The exceptions were overruled and the report of the auditor affirmed, and to this ruling the petitioner excepted

HALL & HAMMOND, for plaintiff.

ABBOTT & SMITH, *contra*.

BLECKLEY, Chief Justice.

Each county is the owner of the public records appertaining to the several courts thereof, and upon the loss or destruction of any book of that description, the county owning it would have as such owner, a right, irrespective of the act of 1887, to have a copy of the same established if the requisite service could be effected ₑ on all parties interested. The act of 1887 takes the right for granted, and attempts to provide machinery for exercising it. It authorizes the ordinary to proceed by petition in the superior court, which petition must set forth the fact of stealing, loss or destruction, specify the book as near as may be, and pray for the establishment thereof. Upon the hearing of the petition, the court may, in its discretion, grant or deny it, as the public interest may require. In case the petition is granted, the court is to pass an order establishing a

copy, or substantial copy, as near as may be; and after its establishment, this copy is to be in all respects evidence just as the original would have been. The provisions for taking evidence in aid of the petition and reporting thereon, are contained in the 4th section of the act, which reads as follows: "It shall be lawful for said court, or the judge thereof, in vacation, in all cases where he shall deem it proper and necessary so to do, to appoint an auditor, whose duty it shall be to hear evidence, and who shall have power to summon witnesses and compel the production of books and papers under such rules and regulations as are now practised in courts of law in this State, and he shall make his report to the court of such copies of such lost, stolen, mutilated or destroyed copies, and such report when filed shall be acted on by the court and made the judgment, unless objection be filed to the same or some part thereof as being incorrect, which objection, if any, shall be heard and determined by the court without the intervention of a jury." Acts 1887, pp. 112, 113.

It will be observed that the power to compel the production of books and papers conferred upon the auditor is to be exercised, not according to any novel or arbitrary method of procedure, but "under such rules and regulations as are now practised in courts of law in this State." The prescribed standard to which the auditor must conform is the practice of the courts. What a court of law could do without deviating from the rules and regulations which govern and control its practice, the auditor can do. The auditor must guide his conduct by the rules and regulations applicable to courts. Where the person called upon is not a party to the cause, he can be reached by a *subpœna duces tecum*. Code, §3514. The *subpœna*, after due service, must be complied with, or certain acts must be done by the witness in lieu of literal compliance, or a sufficient excuse

for non-compliance must be rendered ; otherwise an attachment will issue on motion and a fine be imposed for the default. *Id.* §3515. The letter of the statute seems to contemplate that the time for rendering excuses is after attachment has issued, but no doubt this extension of the time is intended as an indulgence to the witness. Where he is not wholly disobedient but appears as the writ of *subpœna* commanded him to do, there can be no reason why his excuse for not producing the books or documents called for should not be heard at once if the court is ready and willing to hear him. When he is already present no attachment is needed to bring him into court, and if his excuse, on hearing the same, should prove to be good, it would necessarily show that he ought not to be dealt with by attachment or otherwise. What shall constitute a sufficient excuse, the statute makes no attempt to specify or define. It leaves each case to be determined on its own facts. All it says on the subject is, that the excuse is "to be judged of by the court." Whatsoever the court, in the exercise of a sound discretion, ought to deem satisfactory, should be recognized and accepted as sufficient. The excuse rendered to the auditor in the present instance was at bottom a claim of privilege. It challenged the power of the auditor. What it was in detail may be seen by consulting the official report. Resolved into its legal essence it was that, consistently with the rules and regulations observed by the courts of law of this State, the witness could not be compelled to make discovery by *subpœna duces tecum.* So far as appears, there had been no other writ or process issued in the case. There was no party defendant to the petition ; the suit was *ex parte;* it might be considered a proceeding *in rem,* the *Res* being books which had not been seized and could not be seized because they were stolen, lost or destroyed ; the whole object of the suit was to generate

other books to supply their place and stand in their stead as a part of the public records. Nothing whatever was alleged in the petition as to the specific contents of the books or any of them, the different volumes being described simply in terms like the following : "Deed book B, covering a period of time from about June 5th, 1855, to about January 10th, 1856; Mortgage book E, covering a period of time from about February 18th, 1874, to about May 8th, 1876." The contents of the books were, doubtless, unknown to the petitioner, and most probably he could not ascertain them with any degree of fullness or accuracy by mere inquiry, or by any means in his power, personally. or officially, to command. He needed compulsory discovery from one or more persons who had, or could furnish, the information. But according to the methods of procedure known to courts of justice, in order for a plaintiff to obtain discovery, either to enable him to plead or to assist him in establishing the truth of what he has pleaded, he must make the person from whom the discovery is to come a party to the cause. He must *sue* that person for something and ask for discovery as an incident, or *sue* for discovery alone. And a suit *in personam* requires process and service thereof on the defendant. A *subpœna duces tecum* is not process by which to inaugurate a suit; or by which to connect a new party with a pending suit. Such use of it is unheard of in the practice and procedure of courts. Nor, under our code, does that kind of *subpœna* ever issue to any one who is a party to the cause, the mode of compelling the production of books and papers when they are in the power or possession of a party being by the service of written notice. Code, §3508. A *subpœna duces tecum* is not mentioned by the act of 1887, and of course that act cannot be invoked to render it available for any purpose which it would not subserve under the

prior law. Most certainly there was no warrant in the. prior law for using it as a means to compel discovery of the contents of books or documents, with a view to establish copies of them to stand in lieu of the originals. It could be used to bring in evidence to show that an alleged copy was a true copy; that is, it could be used to obtain evidence as contradistinguished from discovery. To verify what is alleged is a legitimate use of the *subpœna;* but without anything for verification being alleged, to employ it for ascertaining what is to be verified, and at the same time for verifying the matter thus discovered, is giving it a double operation, the first half of which is illegitimate. The difference is that between making a statement and then fishing with the *subpœna* for proof of it, and fishing in silence for proof, treating the proof itself as supplying the statement to be established. Should it be said, in reply, that if the contents of the lost books were already known so that they could be alleged, there might be no use for the evidence now sought, the answer is that there would still be all the use for it which can be considered in dealing with it under a *subpœna duces tecum.* It would contribute none the less towards proving the contents of the books; and in order to establish a copy of them, their contents, after being alleged, would have to be proved. The evidence might be less material or indispensable if the contents of the books were otherwise known sufficiently to enable the petitioner to allege them specifically beforehand, but the use or availability of a *subpœna duces tecum* does not depend in any degree upon the scarcity or abundance of the means of proof which may happen to be accessible. The rule is the same whether the evidence called for by the *subpœna* is all that is within reach, or only a small part of it. To prevent misconception, it may be well to observe that it is not meant to intimate that it would be necessary that the contents should

be proved to be exactly, or even substantially, as at first alleged. No doubt the copy offered to be established could be varied by amendment, under the general law applicable to pleadings, as might be needful to make it conform ultimately to the evidence. What we decide is, that something must be presented in the petition, or annexed to it, which is claimed to be a copy in substance of the lost volume or document. This is the scheme of the general law of the State applicable to the establishment of writings which have been lost or destroyed. Code, §§3982–3985. In proceedings between party and party to establish a copy of a lost deed, or other document, no court, we suppose, would think of compelling the production of evidence without seeing something in the petition, taken as a whole (including, of course, the exhibits), to which the evidence wanted could be applied, and which that evidence would or might prove true, or at least tend to prove true. A petition stating that a particular deed, of a given kind and date, was lost or destroyed, but wholly silent as to the contents, would not serve as a basis for coercing the production of evidence to verify its contents and enable the court to formulate by the evidence a copy of the instrument. True it is that generally in such a case the court might treat the deficiency in the pleading as waived unless it was insisted upon by the defendant; but the present case was *ex parte* and had no defendant to speak on the subject. Besides, in any case, the witness ought to be heard in behalf of his own interest when it appears that he is actuated by a *bona fide* regard for that interest, and is not influenced by contumacy or mere caprice. Here the witness urged the interest of the corporation of which he was the proper representative, a private corporation of which he was official secretary, and of whose books he was the custodian. The *subpœna* was addressed to him as secretary and treas-

urer; and the books called for were described therein as "all the abstract books of the Land Title Warranty and Safe Deposit Company, in which appear the abstracts of the following lost records of said county, to wit: Deed books B, F, and H, and Mortgage book E, of the superior court of Fulton county." These abstract books called for by the *subpœna* came into existence as the result of private enterprise and labor, and were afterwards purchased by this private corporation at great expense. They are its private property and are used by it in the conduct of its corporate business. They have never been published. Their contents are kept secret, except as disclosed, piecemeal, in furnishing to applicants therefor abstracts of title relating to specified parcels of real estate; and the furnishing of such abstracts is carried on as a business for pay and profit. The value of the books consists mainly in the secrecy of their contents. Were the information which they afford rendered accessible to the public by other means, the demand for it through the one source now available would be diminished, if not destroyed. The monopoly enjoyed by a closely sealed intelligence office would be broken, and the losses inflicted by free competition would be instantly felt in the exchequer of the establishment. There can be no doubt that the corporation has a vital interest in maintaining the secrecy of these books as a repository of valuable information. And certainly its secretary is under a duty, both legal and moral, not to aid in killing the goose that lays the golden egg if he can help it. His claim of privilege is therefore as meritorious as if his own personal interests were involved. We think the claim protects him, and that the auditor ruled correctly in so holding. It follows that the court committed no error in sustaining the auditor's report and overruling the exceptions thereto which were of file in behalf of the ordinary.

*Judgment affirmed.*